THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN JACA HERNÁNDEZ ET AL., Defendants and Appellants.

Nos. 15601–10.   Argued July 1, 1954.—Decided November 30, 1954.

438

*Francisco Hernández Vargas* for appellants.   *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán, Assistant Fiscal for the Supreme Court,* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Juan Jaca, Carlos M. Castro Ríos, Ricardo Díaz Díaz, Leonides Díaz Díaz, Tomás López de Victoria, Ismael Díaz Matos, Rafael Molina Centeno, Bernardo Díaz Díaz, Manuel Méndez Gandía, Ricardo Díaz, Jr. alias Dico, Justo Guzmán Serrano, Saúl Cuevas Rodríguez, Ángel Ramón Díaz and Carlos Feliciano were charged with murder in the first degree in four cases and with assault with intent to commit murder in six cases.  The four murder informations as well as the six informations for assault with intent to commit murder are identical except for the names of the victims.  Pursuant to a stipulation of the parties the cases were tried together before a jury.  The defendants were convicted and sentenced to four terms of life imprisonment in the murder cases and to six terms of six to fourteen years in the cases of assault with intent to commit murder.  At the request of the defendants we consolidated all the cases for purposes of appeal.

The events charged in the informations were part of the acts of violence engaged in by the members of the Nationalist Party of Puerto Rico on October 30, 1950.  See *Guadalupe v. Bravo, Warden,* 71 P.R.R. 913, 918–19; *People v. Burgos,*

75 P.R.R. 517; *Home Ins. Co. of New York* v. *Dávila*, 212 F.2d 731 (C.A. 1, 1954). The victims, members of the police force of Puerto Rico stationed at Arecibo, were killed, injured or attacked when some of the defendants, pursuant to a plan on which some of the defendants had agreed as part of an attempt to overthrow the government by force on that date, undertook to take possession by force of the police station at Arecibo and in the process killed four policemen and wounded two others.

█ We do not stop to discuss the first, second, third and fourth errors because they are frivolous.[1] The fifth, sixth and seventh assignments are that the proof of the government—the defendants offered no testimony—was insufficient as a matter of law to sustain the convictions of Carlos Feliciano, Carlos M. Castro, and Leonides Díaz Díaz, respectively.

The testimony of the People showed that a group of Nationalists met at the house of Ricardo Díaz—one of the defendants, the husband of Leonides Díaz—where they planned

---

[1] These errors were: First, the Superior Court had no jurisdiction to try the defendants because in substance the charge against them was that on October 30, 1950 they and others were engaged in an armed revolution against the United States, and such a charge may be heard only by a Federal court, either civil or martial. We see no point in using the time and energy of this Court in disposing of such an absurd contention. See *People* v. *Burgos, supra.* Second, the trial court improperly refused to permit counsel for the defendants to ask the captain of police at Arecibo on cross-examination if he had been informed by headquarters that mass arrests were being made at Peñuelas. Apart form the fact that an objection to this question was properly sustained on the ground that there was no testimony thereon during the direct examination, it was irrelevant and in any event the error, if any, in not permitting the question was not prejudicial. Third, the trial court failed to instruct the jury that if it had doubt as to whether the defendants were guilty of murder in the first or second degree, it must resolve this doubt in favor of the defendants and find them guilty of second degree murder. The trial court *motu proprio* ordered the transcript amended to show that in fact it did instruct the jury to that effect, and the defendants took no steps in the lower court to demonstrate that, contrary to the recollection of the trial judge, no such instruction was given. Fourth, the trial court erred in the manner in which it summarized the evidence. The defendants point to no specific defect in the summary and we have found none.

the attack on the Arecibo police station as part of the move-
ment to take place throughout Puerto Rico on October 30,
1950 to overthrow the government by force.   On appeal, the
only testimony on which the government relies to connect Fe-
liciano, Castro and Leonides Díaz with the crimes charged
herein is summarized by the *Fiscal* of this Court in his brief
as follows:

"We see first the testimony of Guillermo Hernández Vega—
accomplice of the defendants.   He testified that he has been a
member of the Nationalist party since 1949;  that on the after-
noon of October 27, 1950 he visited the residence of Ricardo
Díaz, Sr. (one of the defendants), and found there among
other persons Leonides Díaz Díaz, her children Jesús and An-
drés, Manuel Mena de Jesús and Hipólito Miranda (T.E. p. 11,
part 1);  that other persons began to arrive there, among them
Justo Guzmán Serrano, Angel Ramón Díaz, Rafael Molina Cen-
teno, Ismael Díaz Mattos, Tomás López de Victoria and others
(T.E. pp. 12, 13 and 14);  that, availing himself of a pistol and
using the witness, López de Victoria gave a demonstration of
how to defend oneself from the police (T.E. p. 20).

"That they moved to a place behind the house near the
kitchen known as 'The Temple' which also belonged to Ricardo
Díaz, Sr. (T.E. p. 21);  that they spent the entire night there
discussing different things, to the effect that the moment for
the revolt was approaching and that every office which repre-
sented the regime of the United States in Puerto Rico had to be
destroyed, such as post offices and police stations and in passing
to kill the officials who opposed the independence of Puerto
Rico (T.E. p. 30);  that Juan Jaca, Tomás López de Victoria and
Ricardo Díaz, Jr. said this in the presence of the others;  that
in 'The Temple' there were four Japanese rifles, 2 shotguns, a
carbine, hand grenades made in Ebling beer cans, 1 German
machine gun, a bazooka, some booby traps, and knives and
daggers (T.E. pp. 22, 23, 24, 25, 26 and 27);  that he also spent
Saturday, October 28, 1950 in the house of Ricardo Díaz, Sr.,
together with the other persons (T.E. p. 31);  that he also
spent Sunday, October 29 in 'The Temple' and the entire night
until the morning of Monday, October 30, 1950 when they left
to make the attack.

"The witness also testified that during these days people
were coming to the 'temple' where they received food from

Leonides Díaz Díaz who took them food at 'The Temple' (T.E. p. 32); that about the 30th Molotov bombs were prepared in a house about two hectometers from the farm of Ricardo Díaz (T.E. p. 34); and that they were thereafter brought to 'The Temple' (T.E. p. 36). The witness testified that the defendant Carlos Feliciano arrived at the house of Ricardo Díaz on Sunday night October 29 and Carlos M. Castro arrived there on the morning of the same day (T.E. p. 38).

"Referring specifically to the participation of defendants Carlos M. Castro, Carlos Feliciano and Leonides Díaz Díaz in the conspiracy, the witness testified: that Carlos Feliciano arrived at the house of Ricardo Díaz late on Sunday, October 29 (T.E. p. 41); that he stood guard that night in front of Díaz' house to prevent any strangers to the liberation movement from entering 'The Temple' (T.E. 42, 43 and 44); that he accepted the words of leader Jaca Hernández that the time for the revolution had arrived (T.E. p. 45) and that on Monday, October 30, 1950 he left 'The Temple' duly armed and boarded a bus together with twelve of his colleagues with the purpose of preventing reinforcements of the National Guard and Insular Police while six other colleagues from 'The Temple' attacked the Arecibo police station. (T.E. pp. 47, 48 and 49).

"As to Carlos M. Castro the witness testified that on the morning of Sunday, October 29, 1950 he arrived at the house of Ricardo Díaz where he was interested in seeing and had occasion to converse with Juan Jaca Hernández and Ismael Díaz Mattos (T.E. pp. 37, 38 and 39); that on the night of that day Carlos M. Castro, as well as Carlos Feliciano and others, stood guard in front of the house of Ricardo Díaz to prevent strangers to the movement from entering that place (T.E. pp. 42 and 43) and that when Juan Jaca Hernández addressed those present at 'The Temple' on Monday, October 30, haranguing them to the effect that the time for the revolution had arrived, Carlos M. Castro accompanied him (T.E. p. 46).

"Referring to Leonides Díaz Díaz, the witness said that as the housewife she was the person who served and prepared the meals for all those congregated in 'The Temple' (T.E. pp. 31 and 41) and she accepted that the time for the revolution had arrived (T.E. p. 45).

"The testimony of this witness Hernández Vega was corroborated by the testimony of Epifania Cruz Maldonado who

was a servant in the house of Ricardo Díaz during the month of October 1950, Juan Rosario Concepción, Lucas Manuel Reyes, Emilio Olmo Díaz."

We assume that the testimony of the accomplice—that Feliciano and others left Díaz' house in a bus in order to forestall reinforcements for the Arecibo police when the latter were attacked—was sufficient to connect Feliciano with the charges herein, even though Feliciano was not present when the victims were killed or injured at Arecibo. See *People* v. *Berenguer*, 59 P.R.R. 79; *People* v. *Castro*, 75 P.R.R. 630, and cases cited; Dangel, *Criminal Law*, pp. 269–70; Miller on *Criminal Law*, 114; *Underhill's Criminal Evidence*, 4th ed., pp. 1401 *et seq.*; 2 Warren on *Homicide*, pp. 519 *et seq.* The difficulty is that we find no corroboration of this testimony in the record, as required by § 253, Code of Criminal Procedure, 1935 ed. See *People* v. *Portalatín*, 73 P.R.R. 320; *People* v. *de Jesús*, 73 P.R.R. 699. We have already seen that the *Fiscal* of this Court in his brief merely makes a general statement that the testimony of the accomplice was corroborated by certain witnesses without specifically pointing to any corroborating evidence. We have examined the testimony of these witnesses and the rest of the record and find nothing therein which corroborates the testimony of the accomplice with reference to Feliciano.[2] The conviction as to him must therefore be reversed.

As to Carlos M. Castro and Leonides Díaz, the testimony—as the *Fiscal's* own summary shows—establishes at the most that they were in agreement with the general proposition that the time for the revolution had arrived. But the defendants are accused of the murder of four policemen and of assault with intent to kill six others. If the testimony had shown that Castro and Leonides Díaz participated either in the agreement to seize the police station or some of the

---

[2] The only reference we have found to Feliciano by any witness other than the accomplice is the testimony of Epifania Cruz, the servant, who said she had *not* seen Feliciano at the Díaz house.

conduct with reference thereto, they could have been properly convicted by the jury of the charges herein, even though they did not participate in the actual assault on the police station. See *People* v. *Berenguer*, *supra; People* v. *Castro*, *supra;* Underhill, *supra*, pp. 1401 *et seq.;* 2 Warren, *supra*, pp. 519 *et seq.;* Miller, *supra*, p. 114; Dangel, *supra*, pp. 269–70. *Cf. Krulewitch* v. *United States*, 336 U. S. 440, concurring opinion of Mr. Justice Jackson, pp. 445 *et seq.* But there is no testimony in the record that Castro or Leonides Díaz participated either in the plan or any action to consummate it. The only testimony as to them—their presence at the Díaz house and their general acquiescense in the revolutionary movement—does not comply with the necessary requisites for their conviction. Consequently, the convictions of Castro and Leonides Díaz in the cases herein for murder and assault with intent to commit murder cannot stand.[3]

[3] We need hardly add that the fact that Leonides Díaz served meals to the other defendants at "The Temple" is not sufficient, standing alone, to show that she participated in the agreement to assault the police station at Arecibo, resulting in the death and injury of the victims herein. In the same way, the testimony that she condemned the celebration of United Nations day and that when arrested she said that to liberate the homeland blood had to be shed does not show that she committed the crimes of murder and attempt to kill with which she is charged here.

■ The eighth assignment is that the trial court erred in declaring the defendants convicted on six charges of assault with intent to commit murder inasmuch as the testimony shows that only two policemen were wounded. According to the defendants, under the rule laid down in *People* v. *Peña*, 73 P.R.R. 250, under these circumstances only two and not six charges of assault with intent to commit murder were proper. The *Peña* case is distinguishable. There one defendant was accused of assault with intent to commit murder as to five occupants of one automobile, only one person was injured, and the evidence against the one defendant as to all five persons was the same. Here we have an attack made by a group of persons with a common design. Under these

circumstances, the acts of codefendants in furtherance of the common design are admissible against their fellow-defendants as to all the crimes charged herein provided the record contains some independent evidence connecting the latter with the common design. *People* v. *Castro, supra; Pinkerton* v. *United States*, 328 U.S. 640, 647. Consequently, contrary to the situation in the *Peña* case, the evidence as to the *corpus delicti* is different in each case: the evidence as to common design made the various acts of the defendants admissible against each other, whether or not a specific defendant was involved in direct action against a specific policeman. The *Peña* case therefore does not apply here.

For the reasons stated, the judgments as to Carlos Feliciano, Carlos M. Castro and Leonides Díaz will be reversed and new judgments will be entered acquitting them. The judgments as to the other defendants will be affirmed.[4]

Mr. Justice Ortiz did not participate herein.

---

[4] We note in fairness to the trial judge that at no stage of the case in the lower court—either at the close of the government's case or after verdict—did counsel for the defendants raise the question of the insufficiency of the evidence as to some of the defendants.